IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SALVATORE SECONDO,

        Plaintiff,

vs.                                  CASE NO.: 4:07-CV-104-SPM/WS

LARRY CAMPBELL, in his
capacity of Leon County
Sheriff and Deputy Sheriffs,
LARRY FOLSOM and
DORIS MUELLER,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This cause comes before the Court on Defendant Campbell's Motion for Summary Judgment (doc. 10), the Motion for Summary Judgment for Defendants in their individual capacities (doc. 11), and Plaintiff's Response (doc. 27). In accordance with Northern District of Florida Local Rule 56, the parties have had the opportunity to fully brief the issues and submit materials. For the following reasons, Defendants' motions for summary judgment will be granted.

### BACKGROUND

On March 15, 2003, Defendant Deputy Sheriff Doris Mueller and Defendant Deputy Sheriff Larry Folsom were called to a landlord/tenant dispute at 609 Eighth Avenue in Tallahassee, Florida. The tenants, Darrell Bates and Hillary Brock stated that they had been renting this residence from Plaintiff since October 2002. Bates and Brock told Deputy Mueller that Plaintiff had locked

1

them out of the house because they owed Plaintiff back rent.  During this conversation, Plaintiff arrived at the residence.  Plaintiff denied having rented this property to Bates and Brock.  Plaintiff told Deputy Folsom that Plaintiff had not changed the locks and that he had not leased this property to anyone since his last tenant had moved out.  Bates and Brock confirmed that they had been staying with the previous tenants and that they continued living in the property after the previous tenants moved out.  They said that all of their belongings were inside the house.

     Deputy Folsom then contacted the local utility company and confirmed that the utilities were in Hilary Brock's name.  Deputy Folsom concluded that Bates and Brock were tenants in the house.  Deputy Folsom then asked Plaintiff to unlock the door to the house.  Plaintiff refused.  Deputy Folsom told Plaintiff and Bates that because it appeared that Bates was a tenant that Bates could break a window in order to enter the house.  Deputy Folsom also told Bates that Bates would have to pay for any damages to the house.  Bates proceeded to break a window and enter the property.  Bates then emerged from the property with a utility bill confirming that the utilities were in Brock's name.  Deputy Folsom advised Plaintiff to pursue statutory procedures to evict the tenants from the house.  Plaintiff became angry and advised Bates and Brock that he would be within his rights to post armed guards at the residence to protect his property.  Plaintiff called Brock and Bates "scumbags" and told them that he could tear down the house if he wanted to because it was his house.  Additionally, Plaintiff

2

told them that he was the only person who had the right to break the windows in the house and that he could break them all if he wanted to.  Eventually, Plaintiff was arrested by Deputy Mueller and Deputy Folsom for disorderly conduct.

During the arrest, Deputy Folsom directed Plaintiff to put his hands behind his back so that he could be handcuffed.  Plaintiff told Officer Folsom that Plaintiff had recently undergone shoulder surgery and was unable to place his hands behind his back.  Despite Plaintiff's protests of discomfort, Officer Folsom proceeded to handcuff Plaintiff behind his back and place him into the back of the police patrol car.  After approximately five minutes, Plaintiff was removed from the car and his hands were re-handcuffed in front of him. After a few more minutes, Deputy Mueller drove Plaintiff to the local jail.  Later that same day, Plaintiff's friend came to the jail and posted Plaintiff's bond.  After leaving the jail, Plaintiff did not go to the hospital or to see a doctor.  Plaintiff went home and rested.  Plaintiff now alleges that Officer Folsom's handcuffing resulted in approximately $300,000 in medical expenses.

The following day, on March 16, 2003, Plaintiff drove by the rental property on Eighth Avenue and noticed people smashing bottles on the street near the rental property.  Plaintiff yelled and told the people to stop smashing the bottles and then Plaintiff returned home.  A few minutes later, Plaintiff noticed multiple police cars outside of his home.  The police cars were from the Sheriff's Department and the Tallahassee Police Department.  One of these vehicles was blocking Plaintiff's driveway.  Plaintiff recognized Deputy Mueller and Deputy

Folsom among the officers standing outside.  After observing the police outside for approximately 30 minutes, Plaintiff walked out of his house and asked Deputies Mueller and Folsom if they would move the police car so that Plaintiff could exit his driveway.  The Deputies refused.  Deputy Folsom then told Plaintiff that if Plaintiff bothered the tenants again, Plaintiff would be arrested for stalking.  After approximately 10 minutes of conversation between Plaintiff and the Deputies, Plaintiff proceeded to walk down the street to a friend's house.  Plaintiff stayed at the friend's house for approximately 30 minutes and then returned home.  When Plaintiff arrived at his house, the police officers were gone.  After that day, Plaintiff had only passing, incidental contact with Defendants.

      Plaintiff has now filed a four-count complaint against Deputy Folsom and Deputy Mueller and their supervisor Sheriff Larry Campbell.  Count One is a Section 1983 claim alleging that all Defendants are liable for excessive force and reckless indifference, the unlawful taking of Plaintiff's property, the conversion of Plaintiff's property and the failure of the Sheriff Campbell to supervise and train.  Count Two is an assault count against Deputy Folsom for the intentional assault and battery on Plaintiff.  Count Four[1] alleges that Deputy Sheriff Folsom and Deputy Sheriff Mueller violated Plaintiff's constitutional rights by taking Plaintiff's property rights in his vehicle, and depriving Plaintiff of his liberty to move without government interference.  Also in Count Four, Plaintiff claims that Sheriff Campbell failed to properly train, supervise, or discipline his deputy sheriffs as to

---

[1] Plaintiff voluntarily dismissed Count Three of the Complaint.  See doc. 27.

4

the limit of their authority.

## GOVERNING LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On a summary judgment motion, "the court recounts the evidence in the light most favorable to the nonmoving party." Manders v. Lee, 338 F.3d 1304, 1306 (11th Cir. 2003). The moving party bears the initial burden of showing the court that there are no genuine issues of material fact to be decided at trial. Jeffery v. Sarasota White Sox, Inc., 64 F. 3d 590, 593 (11th Cir. 1995); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). If a moving party discharges its burden by pointing out an absence of evidence to support a necessary part of a claim, "the non-moving party must then 'go beyond the pleadings and by its own affidavits, or by depositions, answers, to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial.'" Id. at 594 (quoting Celotex, 477 U.S. at 324).

An issue of material fact is genuine if the "evidence is such that a reasonable jury could return a verdict for a nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."

5

Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).  "The evidence presented [by the nonmoving party] cannot consist of conclusory allegations or legal conclusions."  Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## ANALYSIS

**Takings Claim**

Plaintiff brings multiple takings claims under § 1983.  In Count One Plaintiff claims that Deputy Sheriff Folsom should be held liable for the unlawful taking of Plaintiff's property by destroying Plaintiff's window and converting Plaintiff's property to the use of another. In Count Four, Plaintiff claims that both Deputies violated Plaintiff's property rights in his vehicle by blocking his car in his driveway and not allowing him to drive away.

The text of the Takings Clause in the Fifth Amendment states that no private property  shall be taken for public use, without just compensation.  U.S. Const. amend. V.  "When the government physically takes possession of an

interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof." United States v. Pewee Coal Co., 341 U.S. 114, 115 (1951), Brown v. Legal Found., 538 U.S. 216, 234 (2003).  "Thus, compensation is mandated when a leasehold is taken and the government occupies the property for its own purposes, even though that use is temporary."  Brown, 538 U.S. at 233 (citing United States v. General Motors Corp., 323 U.S. 373, 379 (1945) and United States v. Petty Motor Co., 327 U.S. 372, 374-75 (1946)).

However, before a District Court can evaluate a takings claim, the Eleventh Circuit has instructed that Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnston City, 473 U.S. 172, (1985) "requires potential federal court plaintiffs to pursue any available state court remedies that might lead to just compensation before bringing suit in federal court under section 1983 for claims arising under the Fourteenth and Fifth Amendments for the taking of property without just compensation."  Fields v. Sarasota Manatee Airport Authority, 953 F.2d 1299, 1302-03 (11th Cir. 1992).  The Williamson court clearly stated that "if state procedures exist which might provide compensation for an alleged taking of property without just compensation, then a would-be section 1983 litigant could not yet claim that he had been denied 'just compensation until he exhausted any such avenues of relief.'"  Fields, 953 F.2d at 130 (quoting Williamson, 473 U.S. at 194-97).  Therefore, in order for a Fifth

7

Amendment takings claim to be ripe, Plaintiff must first utilize applicable state procedures for obtaining just compensation.

"This circuit has created a mechanism, called a Jennings reservation, through which a plaintiff can reserve her constitutional claims for subsequent litigation in federal court by making on the state record a reservation as to the disposition of the entire case by the state courts' to preserve access to a federal forum." Bauknight v. Monroe County, 446 F.3d 1327, 1330 (11th Cir. 2006) (quoting Jennings v. Caddo Parish Sch. Bd., 531 F.2d 1331, 1332 (5th Cir. 1976)).  Furthermore, Florida law does indeed provide compensation for deprivation or impairment of the right of access. Anhoco Corp. v. Dade County, 144 So. 2d 793 (Fla. 1962). See also Keshbro, Inc. v. City of Miami, 801 So. 2d 864, 871 (Fla. 2001) (articulating the standard for the analysis of "regulations which fall short of effecting a categorical taking"); Leon County v. Gluesenkamp, 873 So. 2d 460, 464 (Fla. 1st DCA 2004) ("A temporary deprivation may constitute a taking.") (citing Tampa-Hillsborough County Expressway Auth. v. A.G.W.S. Corp., 640 So. 2d 54, 58 (Fla. 1994)).

In this case, Plaintiff has offered no evidence to show that he has brought suit in state court or that he has raised federal issues in any state court claim. Nor is there any evidence that Plaintiff has availed himself of the Jennings procedure by informing the state court that he intended to pursue potential federal claims in federal court if he failed to obtain satisfactory compensation in state court.  Nor has Plaintiff demonstrated that the Florida procedures were

8

unavailable or inadequate.

Therefore, even though this Court is an appropriate venue for the adjudication of federal rights, this Court lacks subject matter jurisdiction over the federal takings claim because the claim is not yet ripe for federal review. This Court is "obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking," Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir. 2004) (internal quotations omitted). Therefore, Plaintiff's takings claims will be dismissed for lack of subject matter jurisdiction pursuant to Federal Civil Procedure Rule 12(b)(1).

**Excessive Force**

In Count One, Plaintiff alleges that Deputy Folsom used excessive force when placing the handcuffs on Plaintiff's wrists. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). See Graham v. Connor, 490 U.S. 386, 394-95 (1989). "In order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'" Lee, 284 F.3d at 1197 (quoting Willingham v. Loughnan, 261 F.3d 1178, 1186 (11th Cir. 2001). "Use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir.

1993).

The Supreme Court has held that "determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Lee, 284 F.3d at 1197 (internal citations omitted). This balancing requires this Court to consider several factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

Applying this standard against the facts presented by Plaintiff, this Court finds that Officer Folsom did not use excessive force. The crime of disorderly conduct is relatively minor. However, even though he was not resisting arrest, based on Plaintiff's affidavit and depositions, Plaintiff did appear to pose a threat to the safety of the officers and the tenants. Additionally, the time that Plaintiff was subjected to the pain and discomfort was very limited. According to both Plaintiff and Defendants' accounts, Plaintiff was handcuffed with his arms behind him for only a few minutes. Officer Folsom re-handcuffed Plaintiff after Plaintiff complained of pain. It is clear that as is often the case in arrests, Plaintiff's handcuffing involved de minimus force. "The typical arrest involves some force and injury." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002). Furthermore, the Eleventh Circuit has stated that "painful handcuffing, without

more, is not excessive force in cases where the resulting injuries are minimal" as was the case here.  Id.

After an examination of the affidavit of Dr. Michael Rohan that was submitted by Plaintiff, it appears that many of Plaintiff's medical injuries were unrelated to the altercation with Deputy Folsom.  Most injuries appear to be injuries resulting from prior shoulder surgeries and wrist injuries.  These injuries are not all the result of any excessive force used by Deputy Folsom.  "What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time."  Rodriguez, 280 F.3d at 1353.  Even if, as Plaintiff claims, the officer was on notice that Plaintiff's shoulder was injured, police officers "need not credit everything a suspect tells him" because suspects will often try to avoid the discomfort of being handcuffed.  Id.  Therefore, the fact that Plaintiff told Deputy Folsom that his shoulder was injured does not automatically require a conclusion that excessive force was used.

This Court concludes that Officer Folsom's use of force was reasonable and complied with all constitutional requirements.  A reasonable jury could not find for Plaintiff on his excessive force claim.  Because there is no use of excessive force, and consequently no constitutional violation, this Court declines to consider the application of qualified immunity.  Accordingly, summary judgment as to this claim will be granted.

**Battery[2]**

In Count Two, Plaintiff claims that Deputy Sheriff Folsom is liable for the assault and battery of Plaintiff. Under Florida law, "battery claim for excessive force is analyzed by focusing upon whether the amount of force was reasonable under the circumstances." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). "Traditionally, a presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages only where the force used is clearly excessive." Id. (citing Jennings v. City of Winter Park, 250 So. 2d 900 (Fla. 4th DCA 1971)). "If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." Sanders, 672 So. 2d at 47.

This analysis is very similar to the excessive force analysis done above. In applying this standard against the facts presented by Plaintiff, the officers did not use clearly excessive force. The force with which Deputy Folsom handcuffed and placed Plaintiff into the patrol car was ordinary force and Deputy Folsom's behavior does not constitute a battery. A reasonable jury could not find Deputy Folsom liable for battery. Accordingly, summary judgment as to the battery claim will be granted.

**Failure to Train or Supervise**

---

[2] In the Complaint, Plaintiff entitles Count Two as "Assault." However, in his motion for summary judgment, Deputy Folsom recharacterizes the claim as one for battery. In Plaintiff's response to the motion for summary judgment, he refers to Count Two as a claim of battery. This Court will analysis this count as a claim for the intentional tort of battery, not assault.

Count One and Count Four allege that Sheriff Campbell is liable in his official capacity under § 1983 because of his failure to train, supervise, or control employees of the Sheriff's Office of Leon County and ensure that its police officers did not violate constitutional and statutory rights of citizens. The complaint alleges a general failure to "properly train, supervise or discipline" them "in the proper execution of their duties as Deputy Sheriff."

There can be no supervisory liability for Sheriff Campbell if there was no underlying constitutional violation by Deputy Folsom or Deputy Mueller. See Hicks v. Moore, 422 F.3d 1246, 1253 (11th Cir. 2005). Therefore, "without an underlying violation of [Plaintiff's] constitutional rights, [Sheriff Campbell] cannot be liable in his individual or official capacity for a failure to train [his deputies and] cannot be liable on the ground that [his] policy caused a constitutional violation." Gish v. Thomas, 516 F.3d 952 (11th Cir. 2008). Accordingly, summary judgment as to the claims against Sheriff Campbell will be granted.

## CONCLUSION

The facts presented by Plaintiff, if proven, would not be sufficient to show that any of the Defendants violated Plaintiff's constitutional rights by forcibly handcuffing Plaintiff, as alleged in Count One. The facts, if proven, are also insufficient to show that Officer Folsom committed the intentional tort of battery on Plaintiff, as alleged in Count Two. As for Count Four, there is no evidence to demonstrate that Sheriff Campbell failed to supervise or train his deputies. Therefore, Sheriff Campbell and Deputies Folsom and Mueller's motions for

13

summary judgment will be granted. Plaintiff has failed to sustain a genuine issue of material fact for any of his claims against any of the Defendants.  Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

1. Defendant Sheriff Campbell's Motion for Summary Judgment (doc. 10) as to Counts I and IV is ***granted***.

2. Defendant Deputy Sheriff Folsom and Defendant Deputy Sheriff Mueller's Motion for Summary Judgment (doc. 11) as to Count I, II, IV is ***granted***.

DONE AND ORDERED this fourth day of April, 2008.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge